**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| CARROLL PLAZA, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No. MJM-25-1241 |
| v. | * | |
| | * | |
| MAYOR AND COMMON COUNCIL | * | |
| OF WESTMINSTER, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Carroll Plaza, LLC ("Plaintiff" or the "Plaza") filed this civil action against the Mayor and Common Council of Westminster ("Defendant" or the "City"), alleging constitutional due process and takings violations and a state tort claim. *See* ECF 1. The City filed a motion to dismiss the Complaint or, alternatively, for summary judgment, ECF 13, the Plaza filed a response in opposition, ECF 18, and the City filed a reply, ECF 22. The Plaza filed a motion for leave to file surreply and to submit newly discovered evidence, ECF 23, which the City opposed, ECF 26, and the Plaza replied, ECF 27. No hearing is necessary to resolve the pending motions. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated herein, both motions are granted, and the Complaint is dismissed without prejudice.

### I.    FACTUAL BACKGROUND

Carroll Plaza, LLC is the owner of commercial retail property commonly known as the Carroll Plaza Shopping Center, located in Carroll County, Maryland. ECF 1 ("Compl.") ¶ 1. Although the Plaza is adjacent to, and not within, the City of Westminster's territorial boundaries, the Plaza, since its inception nearly sixty years ago, has been served by a municipal public water

and sewerage utility operated by the City. *Id.* ¶¶ 7–8. The City also provides water services to properties that neighbor the Plaza. *Id.* ¶ 8.

On or about January 31, 2023, a tenant operating a beauty salon in the Plaza vacated its rented space, Unit R11. *Id.* ¶ 11. Until that tenant vacated, the City regularly provided public water and sewer services to Unit R11 under the Plaza's existing connections for water supply and sewage services. *Id.* ¶ 12.

On or about April 5, 2024, the Plaza executed a lease with International Salon LLC ("International"), also a beauty salon operator, to become the new tenant of Unit R11. *Id.* ¶ 13. On or about May 10, 2024, International's general contractor for its remodel of Unit R11 asked Plaza representatives to sign certain documents for a building permit to be filed with the Carroll County Bureau of Permits and Inspections, including a Water and Sewer Allocation Application requested by the City. *Id.* ¶ 14.

To assist International, a Plaza representative contacted the City on or about May 30, 2024, to obtain a copy of the City's allocation application and to schedule an in-person meeting with City staff on June 13, 2024. *Id.* ¶ 15. At the June 13 meeting, City staff informed the Plaza "for the first time of the City's purported water restrictions for the [Plaza] and its contention that no allocation applications had been received for any of the [Plaza]'s tenants." *Id.* ¶ 16. The Plaza's representative asked the City to provide documentation showing that it previously informed the Plaza about its water allocation restriction. *Id.* ¶ 17. No documentation was provided. *Id.*

Also at the June 13 meeting, Mark Depo, Director of the City's Department of Community, Planning, and Development, advised Plaza representatives that the City would "not release the permit for International's buildout of Unit R11 until the Water and Sewer Allocation Application was submitted." *Id.* ¶ 18. The City requested a floor plan of the Plaza, a list of all tenants, and

square footages for all of the units, and asked that the Plaza's tenants send or resend allocation applications for any tenant that moved into the Plaza after 2019. *Id.* ¶ 19.

On or about June 28, 2024, the Plaza submitted via email a Water and Sewer Allocation Application for Unit R11 and asked the City to advise what steps were needed to finalize the approval of International's building permit application. *Id.* ¶ 20. This email went unanswered. *Id.*

The Plaza requested another meeting with the City, which occurred on August 20, 2024. *Id.* ¶ 21. At the August 20 meeting, Mr. Depo advised Plaza representatives that the City could not release the permit because he would not authorize continued public water and sewer service to Unit R11 for International, stating that "International was projected to use more water in its operation than the prior tenant." *Id.* ¶ 22. He did not provide data regarding calculations or methods of calculation for the City's projection. *Id.* Mr. Depo further advised that, because the Plaza was not within the City's territorial boundaries, the entire Plaza needed to be annexed into the City to receive continued public water service to Unit R11. *Id.* ¶ 23.

Since the meeting on August 20, 2024, the Plaza has multiple times requested an explanation of the City's method of calculating International's projected water usage and the City's capacity to supply that usage. *Id.* ¶ 24. The Plaza has received "incomplete responses." *Id.* ¶ 25.

The Plaza alleges that the City is purporting to act in accordance with a "Water and Sewer Allocations Policy," which states that "property owners of property located outside the City limits but inside the water service area that are eligible for annexation under State law who desire to connect to the City's public water system or require additional allocation must be annexed into the City to be eligible to apply for water allocation." *Id.* ¶ 30. The Plaza does not wish to be annexed into the City, and it contends that its request for continued water service to Unit R11 is not a new request for service. *Id.* ¶ 31. According to the Plaza, the City is using its "need for public water

authorization as a means of coercing an existing user of the City's public water service, at a location within the City's existing water and sewer service area, to annex its commercial property against its will into the City for purposes of obtaining additional property tax revenue from [the Plaza]." *Id.* ¶ 27. The Plaza believes that being annexed into the City would amount to $70,000.00 per year in additional real estate taxes alone. *Id.* ¶ 28.

Due to the City's refusal to issue a permit, International was unable to complete its remodel of Unit R11 and has informed the Plaza that it wishes to terminate its lease. *Id.* ¶ 33. The Plaza has other vacant spaces that it is working to fill with tenants. *Id.* ¶ 35. The Plaza complains that the ongoing water usage controversy will have a chilling effect on prospective tenants interested in occupying the vacant spaces. *Id.*

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) tests the sufficiency of a civil complaint. "To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in [Rule] 8(a)(2), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 596 (D. Md. 2014) (citation omitted). A plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."[1] *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). When a movant files a motion to dismiss seeking summary judgment as alternative relief and presents matters outside the pleadings, Rule 12(d) permits the court to consider those matters and treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Generally, converting a motion to dismiss to a summary judgment motion is not appropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F3d 435, 448–49 (4th Cir. 2011). At the same time, the party opposing summary judgment "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To assert a need for discovery to oppose a summary judgment motion, a non-movant is generally required to file an "affidavit or declaration," pursuant to Rule 56(d), stating that "it cannot present facts essential to justify its opposition[]" to the motion the merits. Fed. R. Civ. P. 56(d); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023). Even without such an affidavit, however, a district court may not grant summary judgment "when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Id.* (citation omitted).

---

[1] When ruling on a Rule 12(b)(6) motion, a court may "consider documents that are explicitly incorporated into the complaint by reference" or "document[s] submitted by the movant" that are "integral to the complaint[,]" if "there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted); *accord Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).

Here, the City styled its motion to dismiss, in the alternative, as one for summary judgment, ECF 13, placing the Plaza on notice that the motion may be decided under Rule 56, *see Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). In response, the Plaza filed a Rule 56(d) affidavit asserting a need for discovery on a number of factual issues. *See* ECF 18-4 (Declaration of William S. Zahler). The Plaza states that it "disputes several of the City's factual assertions but lacks the facts necessary to oppose summary judgment due to the City's purposeful nondisclosure of documents and failure to be forthcoming regarding its determinations." ECF 18 at 23. The City disagrees that discovery is necessary, largely citing the 16 exhibits it has provided, half of which contain communications between the parties. *See* ECF 22 at 1–7. Upon consideration of the parties' submissions, the Court is persuaded that the Plaza has articulated its need for an opportunity to conduct discovery and finds that it would be improper to treat the City's motion as one for summary judgment at this stage of the case. Accordingly, the Court declines to consider any matters outside the Complaint and will decide the City's motion under a Rule 12(b)(6) standard.

III.    ANALYSIS

A.  Constitutional Claims (Counts I through IV)

Counts I, II, and III of the Complaint assert claims for monetary, injunctive, and declaratory relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 for alleged violations of the Due Process Clause and the Takings Clause of the Fifth Amendment and the Fourteenth Amendment to the U.S. Constitution, and Count IV seeks inverse condemnation based on the alleged Takings Clause violation. The Court will address, first, Plaintiff's due process claims and then turn to its takings claims. For the reasons explained below, each of Plaintiff's constitutional claims is subject to dismissal.

### 1. Due Process

Neither 42 U.S.C. § 1983 nor 28 U.S.C. § 2201 is a source of substantive rights; these statutes are only remedial, each providing a method for vindicating substantive rights conferred by other federal laws. *See Brunson v. Stein*, 116 F.4th 301, 308 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1169, 221 L. Ed. 2d 251 (2025); *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011). "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *See Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 748 (D. Md. 2023) (citations omitted). Under 28 U.S.C. § 2201, "upon the filing of an appropriate pleading" articulating an "actual controversy," a federal court may "declare the rights and other legal relations" of a party in a civil action and determine whether further relief could be sought. 28 U.S.C. § 2201(a).

The Plaza alleges that the City violated substantive rights to procedural and substantive due process conferred by the Due Process Clause of the Fourteenth Amendment. To succeed on a due process claim, whether procedural or substantive, "a [plaintiff] must first show that it had a constitutional property interest and that the state deprived it of that interest." *Pulte Home Corp. v. Montgomery Cnty., Maryland*, 909 F.3d 685, 691–92 (4th Cir. 2018) (quoting *Quinn v. Bd. of Cty. Comm'rs*, 862 F.3d 433, 443 (4th Cir. 2017)). The plaintiff bears the burden to show a protectable property interest. *See Herman v. Lackey*, 309 F. App'x 778, 783 (4th Cir. 2009) (unpublished) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 579 (1972)).

A plaintiff has a constitutionally cognizable property interest only if it has a "legitimate claim of entitlement," rather than a mere "abstract need or desire" or "unilateral expectation." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (internal quotation marks and citation

omitted). "Entitlements subject to due process protections are not created by the Fourteenth Amendment, but arise from and are defined by independent sources, including state law." *Pulte Home Corp.*, 909 F.3d at 692. The Fourth Circuit has recognized that "a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest." *Gardner v. City of Baltimore Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992); *see also id.* at 69 (explaining that "this standard appropriately balances the need for local autonomy in a matter of paramount local concern with recognition of constitutional protection at the very outer margins of municipal behavior," and recognizing that the Fourteenth Amendment's Due Process Clause "does not function as a general overseer of arbitrariness in state and local land-use decisions"), *cited with approval in Md. Reclamation Assocs., Inc. v. Harford Cnty.*, 677 A.2d 567, 579 (Md. 1996).

Plaintiff identifies what it contends are two property interests at stake in support of its due process claims: (1) continued receipt of water services; and (2) business and livelihood. The Court will address these claims in turn.

### a. Property Interest in Continued Receipt of Water Services

The City argues that the Plaza's due process claims fail because the Plaza lacks a cognizable property interest. *See* ECF 22 at 9. The Plaza responds that once the City extended water service beyond its territorial boundaries to the Plaza, it assumed a duty to continue providing that service, and the Plaza acquired a property interest in the City's provision of water service, which the City may not terminate for coercive annexation purposes. ECF 18 at 12. But, according to the City, the Plaza has no inherent constitutional right to access the City's water, and it lacks a

"legitimate entitlement" to an approval of its Water and Sewer Allocation Application on behalf of International because the City retains significant discretion under its Water and Sewer Allocation Policy. *See id.* at 9–10.

The Court is unpersuaded by the Plaza's argument that it has a constitutionally cognizable interest in the continued receipt of water service from the City. Courts have recognized that "Maryland law does not create any constitutional right to water or sewer service." *Pulte Home Corp.*, 909 F.3d at 692; *accord Neifert v. Dept. of Env.*, 910 A.2d 1100, 1122 (Md. 2006) (holding that property owners' "right to receive sewer service is not a right created or established by either the United States or Maryland Constitution"); *Quinn v. Bd. of Cnty. Commissioners for Queen Anne's Cnty., Maryland*, 862 F.3d 433, 439 (4th Cir. 2017) ("Quinn's Takings Clause claim based on his lack of sewer service fails because he never had a property interest in obtaining that service."). In claiming a property interest in water service, the Plaza overstates Maryland law and ignores Fourth Circuit precedent.

First, the Plaza cites *Carter v. Suburban Water Co.*, 101 A. 771, 772 (Md. 1917), for the proposition that because water is a "prime necessity of life," a municipality may not arbitrarily shut off service when a bill is subject to a "just dispute." In *Carter*, a landlord who owned 71 rental houses—each dependent on a single water utility with no alternative source—disputed a $291 bill, claiming he was entitled to offset losses caused by the company's prior inadequate service. *Id.* at 771. Although he offered to pay the amount properly owed, the company refused to negotiate and threatened to terminate service unless the full bill was paid. *Id.* Carter obtained an injunction, which the trial court later dissolved on the grounds that he had an adequate remedy at law (damages). *Id.* The Supreme Court of Maryland (then-named the Court of Appeals) reversed, holding that while a water company may shut off service for nonpayment of valid charges, it may

9

not use that power to coerce payment of a bill disputed in good faith. *Id.* at 772. Because water is a "prime necessity," terminating service would cause immediate and serious harm, justifying injunctive relief. *Id.*

*Carter* does not support the Plaza's position. *Carter*, unlike this case, involved whether equitable relief was available to a landlord of residential homes entangled in a good faith billing dispute with his water utility provider. Here, the dispute concerns the conditions of commercial water access imposed by a municipal government on a non-municipal property owner. *Carter* simply does not speak to the issues presented here.

Next, the Plaza cites *Mayor & Council of Rockville v. Goldberg*, 264 A.2d 113 (Md. 1970), to argue it is "axiomatic" under Maryland law that a municipal utility must furnish water "without discrimination and at reasonable rates" when the requested service is within the reasonable reach of its system. In *Goldberg*, the owner of 5.9 acres of unincorporated land blocked Rockville's attempt to annex his property and then obtained a writ of mandamus compelling the City to extend sewer and water service to the property outside the City limits. *Id.* at 113. The Court of Appeals reversed. While reaffirming that a public utility has a duty to serve those within its service area, Maryland's high court clarified that "a city cannot be compelled to supply water to anyone outside its limits," even if it provides limited extraterritorial service by special contract, unless it has placed itself in the position of serving that broader area as a public utility. *Id.* at 117 (citing *Cumberland v. Powles*, 258 A.2d 410 (Md. 1969)). Because Goldberg's property—though near existing lines— was not located in an area the City of Rockville was already serving, he could not compel the City to extend service. *Id.* at 117–18; *see also Spring v. Bradley*, 733 A.2d 1038, 1043 (Md. 1999) (applying *Goldberg* and holding that although the Town of Oxford provided water and sewer service to some properties outside its limits through "special" extensions, it had not held itself out

10

as a public utility for the surrounding area and therefore could not be compelled to extend service to the plaintiff's nearby property).

*Goldberg* also fails to support the Plaza's claim to a cognizable property interest. While *Goldberg* did concern a public utility's relationship with non-residents, the question there was when a municipality could be compelled to serve non-residents, which largely turns on how the municipality "has treated other properties outside its borders[.]" *See Spring*, 733 A.2d at 1040. Here, there is no dispute that the City provided the Plaza services in the past and that it is willing to do so in the future. The question here, therefore, is not about *access* to public utility services, but whether the Plaza has a property interest in the continued *conditions* under which the City provides that access. *Goldberg* does not answer that question. And, as noted *supra*, courts have routinely recognized that "Maryland law does not create any constitutional right to water or sewer service." *Pulte Home Corp.*, 909 F.3d at 692; *accord Neifert*, 910 A.2d at 1122; *Quinn*, 862 F.3d at 439.

The Plaza claims that Maryland law is "no different" than the relevant Tennessee law at issue in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 17 (1978), where the Supreme Court held that a public utility customer had a property interest in continued service, and the Due Process Clause required notice and "some administrative procedure … to afford reasonable assurance against erroneous or arbitrary withholding of essential services." Not so. In *Memphis Light*, the Court determined that residential property owners had a cognizable property interest in continued water service because Tennessee law provided that the public utility could terminate service only "for cause," which gave rise to a "'legitimate claim of entitlement' within the protection of the Due Process Clause." *Id.* at 11–12; *cf. Southside Tr. v. Town of Fuquay-Varina*, 69 Fed. Appx. 136, 138 (4th Cir. 2003) (holding that because, under state law, the municipality

11

was permitted to terminate sewer service to non-residents at will, its breach of its contract with plaintiff was not protected by the Due Process Clause). Here, the Plaza does not plead any facts or cite any law to establish that it had a legitimate entitlement or that the City lacked discretion to set conditions upon its provision of water service. *Cf. Maryland Reclamation Associates*, 677 A.2d at 579 ("Clearly, a local government does not lack 'all discretion' with regard to the enactment of new land-use ordinances." (citing *Gardner*, 969 F.2d at 68)). Accordingly, *Memphis Light* is distinguishable.

In sum, the authorities cited by the Plaza do not demonstrate that it was vested with a property interest in, or legitimate entitlement to, the continued receipt of water service from the City under the same conditions it enjoyed in the past. Instead, the Plaza's arguments amount to claiming a "abstract need or desire" or "unilateral expectation" that it would continue to receive water service from the City under past conditions. *Castle Rock*, 545 U.S. at 756. Thus, this expectation does not give rise to a constitutionally cognizable property interest.[2]

### b. Business and Livelihood

Next, the Plaza claims that, apart from its interest in the continued receipt of water services, it has a "separate and distinct constitutionally protected property interest in the business and livelihood it generates from the [Plaza] which is dependent on the City's continued provision of water services." ECF 18 at 12. This argument also fails.

---

[2] The Plaza questions "whether the City's Policy is truly motivated by an alleged water shortage, or rather, by a desire by the City to compel extraterritorial users of its water utility to annex into the City so as to create new property tax revenue streams for the City." *See* ECF 18 at 17. It is not clear what the Plaza believes is the import of its observation. Without taking a position on what the City's "true" motivation was, raising revenue is a legitimate legislative purpose. *See U.S. v. Carlton*, 512 U.S. 26, 40 (1994) (citing U.S. Const., Art. I, § 8, cl. 1) (Scalia, J., concurring).

The Plaza relies on *Johnson v. City of Saginaw, Michigan*, 980 F.3d 497 (6th Cir. 2020). There, after a gang-related gunfight occurred outside plaintiff Rita Johnson's restaurant while it was being rented for a birthday party, the City of Saginaw suspended water service to the building to prevent further events. *Id.* at 502. Johnson sued under 42 U.S.C. § 1983, alleging violations of her procedural and substantive due process rights. *Id.* at 502–05. The Sixth Circuit affirmed the district court's conclusion that the City violated Johnson's procedural due process rights by failing to provide adequate pre-deprivation process and violated her substantive due process rights through arbitrary state action. *Id.* at 508–11.

In addressing Johnson's property interest, the court stated that "[t]here can be no dispute that Johnson was deprived of a property interest," explaining that "[t]he Supreme Court has held repeatedly that the property interest in a person's means of livelihood is one of the most significant that an individual can possess." *Id.* at 510 (quoting *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988) (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543 (1985))). The court also observed that consumers who rely on utility services become dependent on those services for a "prime necessity of business, comfort, health, and even life." *Id.* (quoting *Palmer v. Columbia Gas of Ohio, Inc.*, 479 F.2d 153, 163–64 (6th Cir. 1973)). It further stated that an expectation of utility services may rise to the level of a "legitimate claim of entitlement" protected by the Due Process Clause. *Id.* at 512 (quoting *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993)).

The Plaza cites no controlling authority recognizing a property interest in a business's "livelihood" based on continued municipal utility service. The Sixth Circuit's decision is not binding on this Court. And, with respect, this Court does not find the reasoning in *Johnson* persuasive. The statement in *Ramsey*—on which *Johnson* relies—recognizing a property interest

in an individual's "means of livelihood" cites *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). But *Loudermill* concerned a public employee who was terminated without an opportunity to respond to allegations that he had falsified his job application. *Id.* at 535. The Supreme Court held that the employee had a protected property interest because Ohio law entitled covered civil service employees to retain their positions "during good behavior" and allowed dismissal only for specified causes. *Id.* at 539. In other words, the property interest arose from state law, which "plainly create[d]" an entitlement to continued employment. *Id.* Plaintiff here does not identify any state law that similarly creates for it an entitlement against any interruption in a commercial entity's "business and livelihood." ECF 18 at 12.

Although the *Loudermill* Court later acknowledged the "severity of depriving a person of the means of livelihood," *id.* at 543, that observation was made during step one of the three-factor *Mathews v. Eldridge* balancing analysis, which considers the "private interest" at stake only *after* a protected liberty or property interest has been established. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (identifying three factors the "bear[] upon the constitutional adequacy of [given] procedures[,]" including, first, "the private interest that will be affected by the official action"); *Elhady v. Kable*, 993 F.3d 208, 228 (4th Cir. 2021) (stating that the court "need not address plaintiffs' claims as to the adequacy of existing processes[]" when plaintiffs fail to demonstrate infringement of constitutional interests); *Accident, Inj. & Rehab., PC v. Azar*, 943 F.3d 195, 203 (4th Cir. 2019) (recognizing that "[t]o prevail on a procedural due process claim," a plaintiff must show deprivation of "a cognizable liberty or property interest;" and "that the procedures employed were constitutionally inadequate[;]'" and applying the three-factor Mathews inquiry "[t]o assess the constitutional adequacy" of given procedures); *Bradley v. Colonial Mental Health & Retardation Servs. Bd.*, 856 F.2d 703, 707, 709 (4th Cir. 1988) (finding a public employee had a

14

legitimate claim of entitlement to continued employment based on the employer's personnel manual and then applying the *Mathews* balancing test to determine whether due process was satisfied). *Loudermill* does not establish that a commercial entity's general interest in its "business and livelihood," standing alone, constitutes a property interest protected under the Due Process Clause.

Ultimately, the Plaza does not cite any binding authority to support the notion that it had a protected property interest in, or a legitimate claim of entitlement to, continued water services provided by a municipality based on commercial interests or business necessity. *Cf. Bartoszewski v. Town of Hannibal*, No. 5:09-CV-1453, 2012 WL 3822014, at *3 n.7 (N.D.N.Y. Sept. 4, 2012) ("[T]he Court finds that Plaintiffs have not identified any legitimate property interest in their commercial access to municipal water for procedural due process purposes."); *Johnson*, 980 F.3d at 518 ("Even as access to utilities constitutes an essential resource, Johnson alleges a *commercial* interest in the water, not a *residential* interest.") (Sutton, J., concurring).[3]

In sum, Counts I through III of the Plaza's Complaint depend on the existence of a sufficiently pled constitutional violation. For the reasons discussed above, the Plaza cannot state a claim that the City violated its procedural and substantive due process rights because it cannot show first show that it had a constitutionally cognizable property interest at risk of deprivation. Therefore, Counts I through III must be dismissed.

---

[3] It is also notable that the defendants in *Johnson* "conceded that Johnson had a 'constitutionally protected property interest' in 'water service to [her] business." *See Johnson*, 980 F.3d at 512 n.8; *see also id.* at 517 ("The parties agree that Johnson has a protected interest in the water.") (Sutton, J., concurring). The corresponding issue in the instant case is contested.

### 2. Takings

In addition to seeking damages and injunctive relief for alleged Fourteenth Amendment due process violations, Count I seeks the same form of relief for the City's alleged violation of the Takings Clause of the Fifth Amendment, and, in Count IV, the Plaza seeks inverse condemnation for the alleged Takings Claus violation. A property own may bring "an 'inverse condemnation' action for just compensation[]" when "a government takes property without condemnation proceedings or just compensation[.]" *D.A. Realestate Inv., LLC v. City of Norfolk*, 126 F.4th 309, 316 (4th Cir. 2025) (emphasis removed). The Plaza's Fifth Amendment claims in Counts I and IV—that the City deprived it of private property without just compensation—fail for the same reason as its due process claims: the Plaza does not plead a constitutionally cognizable property interest.[4]

"The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation." *Putle Home Corp.*, 909 F.3d at 695 (citing *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005)). Like the Due Process Clause, the Takings Clause protects property interests—it does not create it. *See Washlefske v. Winston*, 234 F.3d 179, 183 (4th Cir. 2000) (citing *Phillips v. Washington Leg. Found.*, 524 U.S. 156, 164 (1998)). Accordingly, the analysis "necessarily begins" with determining whether the government's action interfered with property rights. *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 330 (4th Cir. 2005). Property rights are "determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Quinn*, 862 F.3d at 439 (citing *Phillips v. Wash. Legal*

---

[4] "Article III, Section 40 of the Maryland Constitution contains a provision that parallels the Fifth Amendment Takings Clause … and is interpreted *in pari materia* with the federal provision." *McLamb v. City of Mt. Rainier*, Civ. No. DKC 23-3365, 2024 WL 4108570, at *10 (D. Md. Sept. 6, 2024) (citing *Litz v. Md. Dep't of Env't*, 131 A.3d 923, 930 (D. Md. 2016)). Plaintiff does not argue here that these two constitutional provisions should be interpreted differently. *See* ECF 18 at 20 n.2. Accordingly, the above analysis applies equally to both.

*Found.*, 524 U.S. 156, 164 (1998) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972))). "The property owner must show more than a mere hope or expectation; 'he must, instead, have a legitimate claim of entitlement.'" *Id.* (quoting *Roth*, 408 U.S. at 577 (cleaned up)). If no property rights are interfered with, there is no taking. *See Quinn*, 862 F.3d at 439; *Sunrise Corp. of Myrtle Beach*, 420 F.3d at 330. The Plaza does not raise any new argument with respect to its property interest in the takings context that it didn't already make in support of its due process claims, which have all been rejected, above. Instead, the Plaza argues that "[d]ue to the water restrictions imposed by the Policy, Carroll Plaza will be restricted in its ability to offer its space for lease to potential retail tenants; and in fact, it has already lost one tenant, International, due to the City's Policy." ECF 18 at 19. That may be so. But the Plaza has not shown the City's action interfered with its property rights, so its Takings Clause claims fail. *See supra*. Therefore, the Plaza's Fifth Amendment takings claims in Counts I and IV must be dismissed.

### B.  Tortious Interference (Count V)

In Count V of the Complaint, the Plaza asserts a claim for tortious interference with economic relations under Maryland law. The Plaza argues that the City, acting in a "proprietary" capacity, is "intentionally and willfully enforcing its unconstitutional water allocation (and annexation) Policy against Carroll Plaza" and thereby committing tortious interference with the Plaza's economic relations. ECF 18 at 20–22; *see also* Compl. ¶¶ 55–62 (Count V). The City responds that the Plaza fails to state a tortious interference claim and, in any event, that the City is entitled to governmental immunity. *See* ECF 13-1 at 29–31. The Court agrees that the tortious interference claim is barred by governmental immunity.

"Maryland law is well settled that a county (or municipality) generally enjoys immunity against common law tort liability arising out of acts that are governmental, as opposed to acts that

17

are private or proprietary." *Clark v. Prince George's Cnty.*, 65 A.3d 785, 790 (Md. App. Ct. 2013) (citing *DiPino v. Davis*, 729 A.2d 354 (Md. 1999)). Although there is no bright-line rule, whether an entity acts in a governmental or proprietary capacity typically turns on whether the activity is intended to "promote the welfare of the whole public" and is devoid of any "private interest." *Truant v. Persuhn*, Civ. No. RDB-23-00579, 2023 WL 8600552, at *11 (D. Md. Dec. 12, 2023) (quoting *Austin v. City of Baltimore*, 286 Md. 51, 53, 65, 405 A.2d 255 (1979)). Whether the act at issue is "sanctioned by legislative authority" is also relevant. *E. Eyring & Sons Co. v. City of Baltimore*, 252 A.2d 824, 825 (Md. 1969).

Here, there is no dispute that the Mayor and Common Council of Westminster is a municipality generally immune from tort liability under Maryland law. *See Local Government*, MARYLAND STATE ARCHIVES, https://perma.cc/QV5E-C44L (last visited March 30, 2026) (listing Westminster as a municipality of Carroll County). Nor is there any dispute that the Plaza's tort claim challenges the City's legislatively enacted Water and Sewer Allocation Policy. Although the Plaza questions the City's rationale for the policy—including its stated historical water scarcity— it argues that the City's actions are "undeniably proprietary" because the dispute concerns "extraterritorial water supply," which Maryland courts have sometimes described as "proprietary." ECF 18 at 21–22 (citing *Bair v. Mayor & City Council of Westminster*, 221 A.2d 643 (Md. 1966)).

The Plaza misunderstands the import of *Bair*. There, landowners whose property was just outside Westminster sought to compel the city to provide water service. *Bair*, 221 A.2d at 644. The case did not involve a tort claim and therefore did not address governmental immunity. Although the court used the term "proprietary" while discussing a municipality's water service obligations, *id.* at 645, the rule that emerged from *Bair*, as later clarified in *Goldberg*, is that "a city cannot be compelled to supply water to anyone outside its limits," even if it provides limited

18

extraterritorial service by special contract, unless it has placed itself in the position of serving the broader area as a public utility. *See Goldberg*, 264 A.2d at 117. The Court of Appeals later noted in *Spring* that *Bair* also supports the corollary rule that "when a municipality *has* undertaken to supply water" to a defined area outside its limits, it must do so impartially and may not "pick and choose" among similarly situated consumers. *Spring*, 733 A.2d at 1042 (citation omitted) (emphasis in original).

In short, *Bair* addressed when a municipality may be compelled to provide water service; it did not involve a tort claim based on a legislative enactment or governmental immunity. The Plaza's reliance on *Bair*, therefore, is misplaced. The Plaza fails to establish that the City's conduct here was proprietary for governmental tort immunity purposes. Rather, the conduct challenged here—the adoption and enforcement of a legislatively enacted water and sewer allocation policy— is a governmental function undertaken for a public purpose. Because the Plaza's tortious interference claim arises from that governmental action, the City is entitled to governmental immunity. Accordingly, Count V must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF 13) is granted, Plaintiff's motion for leave to file a surreply (ECF 23) is granted, and the Complaint is dismissed without prejudice. The Clerk shall close the case.

A separate Order will issue.

 3/31/26 
Date

Matthew J. Maddox
United States District Judge